UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DONALD HENRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 1:21-cv-00006-HAB-SLC |
| ) | |
| KROGER LIMITED PARTNERSHIP I ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Defendant, Kroger Limited Partnership I ("Kroger"), employed Plaintiff, Donald Henry ("Henry"), as a pharmacist for over a decade before it terminated him. Near the end of his tenure with Kroger, Henry, age 64, labored under several medical conditions which he alleges limited him to working in one location for a maximum of 8 hours. Henry claims that Kroger failed to reasonably accommodate his medical restrictions in violation of the Americans with Disabilities Act ("ADA"). *See* 42 U.S.C. § 12111 *et seq*. He also claims that Kroger discriminated against him because of his age in violation of the Age Discrimination in Employment Act ("ADEA").[1] *See* 29 U.S.C. § 621 *et seq*.

Presently before the Court is Kroger's Motion for Summary Judgment. (ECF No. 39). The motion has been fully briefed (ECF Nos. 39, 51, 54) and is ripe for ruling. For the reasons below, Kroger's Motion for Summary Judgment will be GRANTED. However, as explained herein, Henry's claims for discrimination and retaliation as they relate to his termination remain.

I. **Factual Background**

---

[1] Henry's Complaint (ECF No. 18), included a claim under the Family and Medical Leave Act ("FMLA") but Henry conceded in his brief (ECF No. 51) that "there is no FMLA claim."

From 2007 until March 2020, Henry was a pharmacist for Kroger. (ECF No. 52-2, ¶ 4). At first, he worked as both a staff pharmacist and a floater pharmacist. (ECF No. 60, ¶ 79). A floater pharmacist has all the responsibilities of a staff pharmacist, but a floater pharmacist travels to multiple stores. (*Id.* at ¶ 81). Throughout his employment, Henry primarily worked at Defendant's Store #412, commonly referred to as the "West State Street Store." (*Id.* at ¶ 84).

In 2010, Henry suffered a cardiac event which required a leave of absence[2] from Kroger. He was able to return to work "without restrictions" the same year. (*Id.* at ¶ 23). In 2013, Henry had another cardiac event for which he was hospitalized. (*Id.* at ¶ 24). Henry claims that his doctor restricted him from working more than eight hours with a preference for the same location.[3] Still he returned and worked as a floater pharmacist for most of 2013 and 2014. (*Id.* at ¶ 25). Sometime after 2014, Henry transitioned to a staff pharmacist position at the West State Street Store.

Kroger conducts formal yearly performance reviews for its employees. (*Id.* at ¶ 11). For those who fail to meet Kroger's expectations, Kroger provides the opportunity, tools, development, and feedback for improvement. (*Id.* at ¶ 13). For those rated "Needs Improvement," Kroger regularly administers a Performance Improvement Plan ("PIP") which is a collaborative process designed to improve job performance. (*Id.* at ¶ 14).

In 2017, Kroger began requiring its pharmacists to perform clinical queue interventions. (*Id.* at ¶ 26). These interventions consisted of communications with clients—either face-to-face or over the phone—in which the pharmacists discuss the patient's medications. (*Id.* at ¶ 18). Insurance companies pay Kroger for successful management of these interventions with patients. (*Id.*).

---

[2] Henry maintains that the "Leave of Absence" Application was forged by somebody in Kroger's human resources department as he was in a medically induced coma and could not fill out the forms himself. (ECF No. 60, ¶ 23).
[3] Henry supported these restrictions with his own deposition testimony and a doctor's note dated January 15, 2020. The note stated to please "continue" the restrictions of eight hours shifts with a preference for one location. (ECF No. 43-2 at 22).

2

Kroger also uses a third-party vendor that provides medical therapy management ("MTM"). (*Id.* at ¶ 20). MTM provides lists of potential interventions that are tracked using third-party software and Kroger gets paid for its use. (*Id.*).

In October 2017, Henry's then-supervisor, Nick Sloffer ("Sloffer"), placed him on a PIP—noting Henry's inability to meet Kroger's new expectations. (*Id.* at ¶¶ 27-31). The 2017 PIP identified clinical queue interventions as a problem area. (*Id.* at ¶ 29). In December 2017, Sloffer informed Henry that he would be terminated if he did not begin completing Customer Medical Reviews ("CMRs"), which are similar to clinical queue interventions. (*Id.* at ¶ 30). Henry complained that he could not meet these goals based on understaffing at the West State Street Store.

Richard Koomler ("Koomler"), Kroger's Pharmacy Practice Coordinator, became Henry's supervisor in 2018 until the end of Henry's employment. (*Id.* at ¶ 4). Henry's performance failed to improve which resulted in his 2018 Year-End Performance Rating of "Needs Improvement" as his pharmacy group failed to meet two of three annual objectives. (*Id.* at ¶ 32). Koomler issued Henry another PIP in May 2019. (*Id.* at ¶ 34). Some of Henry's goals in the PIP were "a minimum amount of clinical queue interventions, MTM execution, and ensuring the pharmacy technicians rotate and focus on specific tasks, such as product dispensing and post-fill audits." (*Id.* at ¶ 34).

In June 2019, Henry met with Koomler and Kroger's store manager for the West State Street Store to discuss Henry's PIP. (*Id.* at ¶ 35). When his clinical goals were brought up, Henry stated that he felt the store was understaffed such that he could not meet Koomler's clinical queue intervention goals. (*Id.*). At this meeting, Henry told Koomler that he thought Kroger was engaging in age discrimination. (*Id.* at ¶ 36). Koomler responded by stating that there was a pharmacy school on every corner and Henry suggested that it would take two young pharmacists to do his job. (*Id.*).

3

Koomler, along with two members of Kroger's human resources department, held a 60-day PIP progress meeting with Henry in August 2019 to discuss his reports. (*Id.* at ¶ 37). In the meeting, the following deficiencies were discussed with Henry:

> a. Henry was supposed to complete 75% of his clinical queue interventions each week, but he successfully completed zero interventions in 6 of the past 8 weeks.
>
> b. Henry was not performing his share of the interventions on the MTM list. Kroger expected him to perform approximately half of these tasks as he and Ron Miller, the pharmacy manager at the West State Street store, were the only pharmacists regularly at the store. Despite this expectation, Henry had performed only 10 of the 92 MTM tasks in the past 60 days.
>
> c. While the PIP directed Henry to ensure that the technicians rotated tasks within the pharmacy and focused on technician tasks, Henry had no rotation of his technicians and continued to perform dispensing and post-fill audits that he should have delegated to the technicians. For example, Henry performed 9,026 produce dispensing tasks in 2019 while Miller only performed 4,766 such tasks over the same period. Likewise, Henry performed 5,409 post-fill audits in 2019 while Miller performed only 3,392 during that same period.

(*Id.*). On top of these concerns, Koomler addressed other issues such as Henry's failure to recap individual performance metrics weekly and his failure to promote technician rotation. (*Id.* at ¶ 38). In response, Henry claimed he could not achieve these expectations because of the West State Street Store's layout. (*Id.* at ¶ 37).

As a staff pharmacist, Koomler expected that Henry would do as many clinical queue interventions as Ron Miller ("Miller")—the only other full-time staff pharmacist at the West State Street Store—because Miller had additional duties as pharmacy manager. (*Id.* at 41). Yet Henry performed 96 fewer clinical interventions and had 69 fewer successful interventions than Miller from May to August 2019. (*Id.*) After the August meeting, Henry performed 91 fewer interventions with 31 fewer successful interventions than Miller. (*Id.* at ¶ 42).

Rather than terminating Henry, Koomler decided to transfer him to a floater pharmacist position. Koomler informed Henry of the transfer in November 2019. Henry made no mention of any medical restrictions which affected his ability to work in the new role. (*Id.* at ¶ 45). Kroger

4

sent a confirmation letter which confirmed that Henry's base salary would remain the same. (*Id.* at ¶ 47).

In December 2019, Kroger's human resources department sent Henry his floater schedule for January 2020. (*Id.* at ¶ 50). Soon after, Henry emailed Koomler and claimed that a disability prevented him from working shifts longer than eight hours and he was restricted to working at one location. (*Id.* at ¶ 51). Henry provided no documentation supporting the alleged restrictions at the time. Still, he believed the restrictions warranted returning him to his position as a staff pharmacist at the West State Street Store.

Henry informed Koomler and members of Kroger's human resources team that he would not work until his restrictions were accommodated: (1) to only work at one store location and (2) to work no more than eight hours per shift. (*Id.* at ¶ 53). Henry's only proposed accommodation was to return to his role as a staff pharmacist. (*Id.*).

After a vacation, Henry did not return until three days after his first scheduled floater shift. When he did return, he met with Kroger's human resources manager, Sheila Baughman ("Baughman"), who explained that Kroger had no documentation supporting his claimed restrictions. (*Id.* at ¶ 56). The next day Henry emailed Baughman a doctor's note—dated January 15, 2020—that advised that Henry must "continue with restrictions of 8 hours a day, *preferably* in the same location…" (*Id.* at ¶ 57) (emphasis added). Baughman requested to meet with Henry again. (*Id.* at ¶ 58).

Koomler was present for the second meeting on January 31, 2020. (*Id.* at ¶ 59). At this meeting, Baughman and Koomler informed Henry that the doctor's note did not prohibit him from working at multiple locations. (*Id.*). Upon hearing this, Henry abruptly left the meeting before a resolution was reached. (*Id.*). The meeting lasted no longer than fifteen minutes.

5

Kroger's Human Resources Leader, Pat McNall ("McNall"), sent Henry a letter to follow up on the January meeting. (*Id.* at ¶ 60). McNall expressed an intent to work with Henry. (ECF No. 43-2 at 26). The letter explained that, while occasionally working shifts more than eight hours was an essential function of both staff and floater pharmacists, Henry could use intermittent FMLA leave for any shifts over eight hours. (*Id.*). And Kroger paid Henry for his unworked shifts in January because of negotiations over his restrictions. (*Id.*). Attached to the letter was Henry's floater pharmacist work schedule which complied with his shift length restriction. (*Id.*). Even still, Henry failed to work as scheduled. In February 2020, Kroger's human resources sent another work schedule which complied with his shift length restriction. (ECF No. 60, ¶ 63). Again, Henry failed to work as scheduled. (*Id.*).

On February 12, 2020, Kroger human resources sent a letter explaining that if Henry failed to report to his next shift or apply for leave, he may be terminated. (*Id.* at ¶ 65). And the letter invited Henry to provide updated documentation if the work restrictions from his doctor's note were clarified or revised. (*Id.* at ¶ 66). Henry did not provide additional documentation. Nor did he return to work or apply for leave. Kroger terminated Henry on March 6, 2020, effective February 12, 2020—the day Henry exhausted his paid time off. (*Id.* at ¶ 74).

## II. Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]n order to withstand summary judgment, the nonmovant must allege *specific* facts creating a genuine issue for trial and may not rely on vague, conclusory allegations." *Gabrielle M. v. Park Forest-Chicago Heights., Ill. Sch. Dist. 163*, 315 F.3d 817, 822 (7th Cir. 2003). Still, a

court must view the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650 (2014).

The Court's role is not to weigh the evidence or evaluate the credibility of the witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). But the "non-movant does not satisfy its burden merely by pointing to self-serving allegations that otherwise are without evidentiary support." *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994). Indeed, "summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005), *cert. denied*, 546 U.S. 1033 (2005) (quotations omitted).

### III. Discussion

Kroger moves for summary judgment on both Henry's ADEA and ADA claims. As for the ADEA claims, Kroger contends that Henry has no cause of action because: (1) he failed to meet Kroger's legitimate expectations; (2) the transfer to floater pharmacist was not an adverse employment action; and (3) no evidence supports that Henry's age caused his transfer. (ECF No. 40 at 11). Under the ADA, Kroger believes that Henry's claim fails because (1) there was no existing accommodation before the January 2020 doctor's note; (2) Kroger engaged in the interactive process with Henry; (3) Kroger offered an appropriate accommodation; and (4) Henry's only requested accommodation was unreasonable as a matter of law. (*Id.* at 17-21).

Henry disagrees and believes there is sufficient evidence for a jury to find that his age and alleged disabilities were the determinative factors for his transfer. (ECF No. 51). To the contrary, neither Henry's ADEA nor ADA claims have such support as they relate to his transfer. But Henry

7

also claims that his discharge was motivated by discrimination as defined by the ADEA and ADA. And Kroger did not address Henry's termination.

### A. ADEA Claims

"The ADEA protects workers 40 years of age and older from age-based employment discrimination." *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018). To recover under a theory of disparate treatment in the ADEA context, "it's not enough to show that age was a motivating factor. The plaintiff must prove that, but for his age, the adverse action would not have occurred." *Id.* Indeed, "proof that the plaintiff's age was a motivating factor, but not a determinative factor, in the employer's decision, will not suffice to establish the employer's liability." *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 (7th Cir. 2010).

Discrimination claims may be reviewed on summary judgment under the direct or the burden-shifting methodologies. *See David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). When a plaintiff responds to a motion for summary judgment on an intentional discrimination claim by relying on the burden-shifting framework created by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a court should assess the case in those terms. *Id.*; *see also Ferrill v. Oak-Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (noting that *McDonnell Douglas* burden-shifting analysis has not been displaced). However the plaintiff chooses to proceed at the summary judgment stage, the Court must consider all the evidence together to determine whether a reasonable jury could "conclude that the plaintiff's…[age] caused the discharge. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d. 760, 765 (7th Cir. 2016). The ultimate question being: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David v. Board of Trustees of*

*Cmty. Coll. District No.* 508, 846 F.3d 216, 224 (7th Cir. 2017). Plaintiff has invoked the burden-shifting framework in his Response. (ECF No. 51 at 6).

Under the burden-shifting approach, Henry must come forward with evidence showing that (1) he is a member of a protected class, (2) he was meeting the defendant's legitimate expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees who were not members of his protected class were treated more favorably. *Simpson v. Franciscan Alliance, Inc.*, 827 F.3d 656, 661 (7th Cir. 2016). If the plaintiff has established this prima facie case, the burden shifts "to the defendant to 'articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual.'" *Id.* (citation omitted).

Here, Henry claims he can demonstrate age discrimination under both the direct method and the *McDonnel Douglas* framework. The Court will address each method in turn.

The direct method requires Plaintiff to offer direct or circumstantial evidence that Defendant's decision to terminate him was motivated by age. *Tubergen v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 517 F.3d 470, 473 (7th Cir. 2008). In support of the direct method, Henry points out what he calls suspicious timing and, without citing to any specific portion of his exhibits, Henry claims he "has shown through his charts that his performance was up to par with other younger and non-disabled pharmacists" and "the timing [of his transfer] is suspicious." (ECF No. 51 at 8). Henry's theory seems to revolve around Koomler's comment that there was a pharmacy school on every corner and that Henry could be replaced by a younger pharmacist who could meet Kroger's expectations. Yet the comment does not negate Henry's subpar performance. *See Fortier v. Ameritech Mobile Commc'ns, Inc.*, 161 F.3d 1106, 1113 (7th Cir. 1998) (holding that statements referring to "new blood" being good and a younger applicant having a "lot of energy" do not reflect

9

age bias to create a genuine issue of material fact). Further, temporal proximity of the alleged comment and the adverse action is of importance in this context. *Diebel v. L & H Res., LLC*, 492 F. App'x 523 (6th Cir. 2012) (suggesting that "seven months is longer than most cases in which this court has recognized temporal proximity"). The comment here was purportedly made six months before the transfer. Accounting for timing and the nature of the comment, Henry has failed to demonstrate direct evidence of age discrimination.

Turning to the *McDonnel Douglas* methodology, there is no dispute that Henry is over 40 years old. Kroger's motion attacks the remaining elements of the prima facie case. It contends that (1) Henry performed unreasonably; (2) his transfer was not an adverse employment action; and (3) that Henry's age was not the but-for cause of his transfer. (ECF No. 40 at 11-14). Henry responds that he complied with Kroger's expectations during his employment, the transfer was a demotion, and his age was the cause of his transfer. (ECF No. 51 at 5-8).

Regarding Henry's performance, Kroger produced evidence that Henry had the same ongoing performance problems for years. Sloffer, for instance, placed Henry on a PIP in 2017, noting his lack of clinical queue interventions and poor leadership behaviors. These problems were mirrored in Henry's 2018 annual performance review when he was rated as "Needs Improvement" because of his group's failure to meet two out of three objectives. In 2019, Kroger issued Henry another PIP with the goals of increasing clinical queue interventions and improving leadership over technicians. Henry failed to meet these goals and was substantially outperformed by Miller, another staff pharmacist of similar age.

Henry though, emphasizes that, from 2014 on, he received a number of positive annual performance reviews. Even accepting these positive reviews, he struggles to dispute Kroger's evidence of poor performance beginning in 2017. He points to two pieces of evidence: first, that,

10

collectively, the West State Street Store pharmacists' group met all of Kroger's annual incentive goals—a group accolade; and second, he identifies a single email from Koomler in August 2018 that congratulated him for having the most clinical queue interventions in his district for the previous week. That Henry occasionally performed well, however, fails to rebut Kroger's documented evidence that he was regularly not meeting its expectations after 2017. *See Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 980 (7th Cir. 2004) (recognizing that an employee's acceptable performance for most of a period of employment "does nothing to rebut" an employer's contention that a specific aspect of the employee's performance warranted termination); *Schroeder v. Barth, Inc.,* 969 F.2d 421, 424 (7th Cir. 1992) ("To survive a motion for summary judgment, the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

But even if the Court found a question of fact as to Henry's performance, Henry's case has other problems. He has not met his burden of showing that the transfer from staff pharmacist to floater was an adverse employment action. Adverse employment actions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities[.]" *McKenzie v. Milwaukee Cnty.*, 381 F.3d 619, 625 (7th Cir. 2004). Adverse actions generally fall into three categories: "(1) termination or reduction in compensation, fringe benefits, or other financial terms of employment; (2) transfers or changes in job duties that cause an employee's skills to atrophy and reduce further career prospects; and (3) unbearable changes in job conditions." *Hambrick v. Kijakazi,* 2022 WL 17082516, at *8 (N.D. Ill. Nov. 18, 2022).

Here, Kroger laterally transferred Henry from staff pharmacist to a floater pharmacist. His salary and benefits remained the same. The sole difference between the floater and staff positions was that Henry would work at different locations with a less rigorous workload instead of solely

11

at the West State Street Store. Neither changing an employee's schedule nor increasing travel, without more, are materially adverse employment actions.[4] *See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc.,* 254 F.3d 644, 654 (7th Cir. 2001); *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) (holding a change in working hours is not an adverse employment action when an employee's pay, job title, and responsibilities remain the same); *Hill v. Am. Gen. Fin., Inc.*, 218 F.3d 639, 645 (7th Cir. 2000) (holding a change in job title and an increased travel distance to work do not qualify as an adverse action by themselves); *see also Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (holding increased travel time did not create an adverse action). While Henry is dissatisfied with Kroger's decision, "not everything that makes an employee unhappy is an actionable adverse action." *O'Neal v. City of Chi.*, 392 F.3d 909, 911 (7th Cir. 2004). Henry has not raised a question of fact that Kroger took an adverse action against him by transferring him to the floater position.

Lastly, even if Henry could establish a prima facia case of age discrimination, he still cannot prove that age undergirded Kroger's legitimate reasons for the transfer. To show pretext, Henry must reveal that Kroger's proposed reason for the adverse action is "an attempt to mask a discriminatory reason with a legitimate excuse." *Brooks v. Avancez,* 39 F.4th 424, 434 (7th Cir. 2022). Kroger provided specific data showing that Henry failed to perform a specific task—clinical queue interventions—which Kroger emphasized as a key metric for performance. Kroger consistently reinforced the tasks' importance through evaluations and counseling, but Henry failed to improve. No evidence suggests Kroger lied about its assessment that Henry was underperforming. *See Jackson v. E.J. Brach Corp.,* 176 F.3d 971, 985 (7th Cir. 1999) (holding an

---

[4] In Henry's Response (ECF No. 51), Henry failed to cite any evidence or address any aspects of Kroger's argument regarding adverse employment actions. Instead, he merely quoted the elements by citing to one Seventh Circuit opinion and an opinion from the Northern District of Illinois. (ECF No. 51 at 7).

12

employee's statements about his ability are insufficient to contradict an employer's negative assessment of that ability). The fact that Henry believes he was performing satisfactorily does not change this Court's analysis. Kroger is entitled to summary judgment on Henry's age discrimination claims.

In Henry's response, he briefly argues without citation to evidence, that Kroger retaliated against him because he "reported Koomler's ageist comment" and the timing of the transfer is "more than suspicious." *See Leitgen v. Franciscan Skemp Healthcare, Inc.,* 630 F.3d 668, 675 (7th Cir. 2011) ("suspicious timing alone is almost always insufficient to survive summary judgment"). On December 18, 2019, Henry filed a Charge of Discrimination with the Fort Wayne Metropolitan Human Relations Commission. (ECF No. 60, ¶ 49). Henry's arguments that his transfer was in retaliation for filing his Charge are undeveloped and unsupported. *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.,* 845 F.3d 313,321 (7th Cir. 2017) ("[U]ndeveloped arguments are waived[.]"). Thus, Kroger is entitled to summary judgment on Henry's ADEA retaliation claim too.[5]

**B. ADA Claims**

The ADA requires an employer to provide a reasonable accommodation to an employee "with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Like an ADEA claim, the plaintiff can prove his claim using the *McDonnell Douglas* burden shifting approach. To establish a claim for failure to accommodate, Henry must show that: (1) he

---

[5] Even giving Henry the benefit of the doubt, he only points to the suspicious timing between reporting the alleged "ageist comment" and the transfer. Henry reported the comment one month before the eventual transfer. Without more, mere temporal proximity between the protected activity and the retaliatory action is rarely sufficient to create a triable issue. *See Arnold v. Visiontek Prods., LLC*, 748 F. App'x 59, 62 (7th Cir. 2019) (finding a one-month interval insufficient); *Povey v. City of Jeffersonville, Ind.*, 697 F.3d 619, 624 (7th Cir. 2012) (finding a three-week interval insufficient). In addition, there is no evidence to suggest Kroger's stated reason for transferring Henry to the floater position -his poor performance - is pretextual.

is a qualified individual with a disability; (2) Kroger was aware of his disability; and (3) Kroger failed to reasonably accommodate his disability. *Hoffman v. Caterpillar, Inc.,* 256 F.3d 568, 572 (7th Cir. 2001). As to the third element, the "ADA requires that employer and employee engage in an interactive process to determine a reasonable accommodation." *E.E.O.C. v. Sears, Roebuck & Co.,* 417 F.3d 789, 797 (7th Cir. 2005). "If the plaintiff establishes these elements of the prima facie case, the burden shifts to the employer to prove that the requested accommodation would impose an undue hardship on the operation of the defendant's business." *Conners v. Wilkie*, 984 F.3d 1255, 1261 (7th Cir. 2021).

Kroger posits that they were unaware of Henry's alleged disability, properly engaged in the interactive process, and offered to reasonably accommodate Henry in compliance with 42 U.S.C. § 12111(8). Whereas Henry believes Kroger knew of his restrictions—working only eight-hour shifts at a single location—and failed to accommodate them. A plaintiff must normally request an accommodation before liability attaches. *Jovanovic v. In–Sink–Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000).

To that end, Henry contends that Kroger rescinded previously granted accommodations for restrictions which they knew of since his 2013 cardiac event. Henry admits that he does not have a copy of any restrictions from 2013. Nor does he point to any documentation from a medical professional. Henry does mention an email he sent to Sloffer in 2017 where he stated "we will have to do some creative scheduling…as I am [m]edically limited to 8 hour shifts." (ECF No. 52-5). Outside the email, there is no indication that Kroger's management had any knowledge of Henry's medical restrictions before December 27, 2019.[6] Even still, Henry admits that he worked

---

[6] Henry appears to argue that he began working shifts over eight hours in 2017 and sent this email as a result, despite admitting in his deposition and Appendix that he worked shifts in excess of eight hours consistently since 2014. Regardless, any claims about a failure to accommodate in 2017 or 2018 prior to his transfer are untimely as Henry first asserted an ADA claim in an EEOC charge in January 2020. *Muckenfuss v. Tyson Fresh Meats, Inc*., 581 F. Supp.

14

shifts in excess of eight hours during his employment after 2017. In a complaint he sent to Kroger executives, he shared his dissatisfaction with working ten-hour days, but does not mention a disability or request an accommodation. (ECF No. 43-1 at 26). And no documentation supports that Henry "was on medically ordered work restrictions against….working at a variety of store locations in a week." (ECF No. 51 at 12).

Once aware, "the ADA obligates the employer to engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *Gile v. United Airlines, Inc.*, 213 F.3d 365, 373 (7th Cir. 2000) (internal quotations omitted); *Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134-36 (7th Cir. 1996). Both parties bear responsibility for determining what accommodation is necessary. *Beck,* 75 F.3d at 1135. "Where the employee does not provide sufficient information to the employer to determine the necessary accommodations, the employer cannot be held liable for failing to accommodate the disabled employee." *Reeves ex rel. Reeves v. Jewel Food Stores, Inc.*, 759 F.3d 698, 702 (7th Cir. 2014) (citing *Beck*, 75 F.3d at 1135).

Moreover, if an employer proposes an accommodation that satisfies the employee's restriction and the employee rejects the proposal, the employee is responsible for terminating the interactive process and is not entitled to relief under the ADA. *Gratzl v. Off. of Chief Judges of 12th, 18th, 19th, & 22nd Jud. Cirs.*, 601 F.3d 674, 682 (7th Cir. 2010); *see also Gile v. United Airlines, Inc.,* 95 F.3d 492, 499 (7th Cir. 1996) ("[W]hen an employee requests a transfer as reasonable accommodation and the employer offers alternative reasonable accommodations, which the employee then refuses, the employer cannot be liable for failing to reasonably

---

3d 1114, 1119 (N.D. Ind. 2022) (holding ADA charges must be filed within 300 days of the alleged violation and, "[f]or a failure to accommodate claim, the clock starts to run when the plaintiff learns his request was denied").

accommodate the employee by not transferring him to another position."). And where an employee "fail[s] to hold up [their] end of the interactive process by clarifying the extent of [their] medical restrictions," an employer "cannot be held liable for failing to provide reasonable accommodations." *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998); *see also Hoppe v. Lewis Univ.*, 692 F.3d 833, 840 (7th Cir. 2012) (granting summary judgment where, "The undisputed evidence in the record show[ed] that Hoppe did not provide the university with the information it needed and requested and the university took reasonable steps even without this information to accommodate Hoppe's disability.").

As soon as Kroger's then-management learned of Henry's restriction, they immediately began the interactive process. They searched for prior medical documentation supporting his alleged prior medical restrictions to no avail. Kroger's staff found nothing. And Kroger's records appear to contradict Henry's purported restrictions as he routinely worked shifts more than eight hours. Without any evidence supporting the restrictions, Kroger representatives requested a copy of the prior restrictions. Yet Henry provided no such documentation.

What Henry did provide was a doctor's note dated January 15, 2020. (ECF No. 43-2 at 22). It restricted Henry from working shifts over eight hours—consistent with his request—but did not prohibit him from working at multiple locations—contrary to his request. (*Id.*) Even still, Henry does not dispute that Kroger accommodated his shift length restriction after he provided supporting documentation.

The evidence shows that Kroger's staff continuously attempted to work with Henry to find the appropriate accommodation. Henry mentioned the alleged restrictions to Kroger's then-management on December 27, 2019—over a month after Kroger's employees informed Henry of the transfer to the floater position, weeks after he filed his initial Charge, and days after he received

16

his floater schedule. Kroger then sought corroboration for the alleged restrictions. Although the shift length restriction was corroborated by the 2020 doctor's note, it did not express a need to work at a single location. Kroger sought clarification regarding the location restriction. *See Bultemeyer v. Fort Wayne Cmty. Sch.,* 100 F.3d 1281, 1285 (7th Cir. 1996) (stating that where the precise nature of the disability or desired accommodation are ambiguous, the employer must ask for clarification). Despite numerous attempts to communicate with Henry by Kroger's staff (ECF No. 60 at ¶¶ 59, 60, 63, 66, and 71), he never provided the requested medical documentation. Nor did he return to work for subsequent shifts which complied with his shift length restriction.

Indeed, it was Henry's failure to communicate and provide supporting documentation which caused the breakdown of the interactive process. *See Gogos v. AMS Mech. Sys.*, 678 F. App'x 411, 414, 415 (7th Cir. 2017) ("employers may require medical evidence of an employee's asserted disability," and "[a] doctor's note would have facilitated the required interactive process"); *Brown v. Milwaukee Bd. of Sch. Dirs.*, 855 F.3d 818, 826 (7th Cir. 2017) (employee "failed to hold up her end of the interactive process by clarifying the extent of her medical restrictions"); *Beck*, 75 F.3d 1130, 1137 (7th Cir. 1996) ("where, as here, the employer makes multiple attempts to acquire the needed information, it is the employee who appears not to have made reasonable efforts"); *Travis v. Brennan*, 2020 WL 1330379 (N.D. Ill. Mar. 23, 2020) (summary judgment for employer where employee was asked to clarify an ambiguous doctor's note, but never did so); *Ward v. McDonald*, 762 F.3d 24, 34 (D.D.C 2014) (employee abandoned the interactive process by refusing to provide the requested information). The undisputed evidence shows that Kroger accommodated Henry's shift length restriction upon being informed. Yet there is no evidence of a location restriction and Henry abandoned discussions when Kroger's staff

17

requested clarification. Thus, Kroger is entitled to summary judgment on Henry's failure to accommodate claim.

As with Henry's ADEA claims, Henry briefly argues that Kroger transferred him in retaliation for requesting accommodations under the ADA. In Henry's section titled "ADA Retaliation[,]" he provides no facts at all. Instead, the entire section consists of three sentences quoting *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018). By not providing any argument or detail about Henry's retaliation claim, he has waived that claim. *See M.G. Skinner*, 845 F.3d at 321. As such, Kroger is entitled to summary judgment on Henry's ADA retaliation claim as well.[7]

**C. Termination**

There is one glaring flaw in Kroger's motion that would preclude this Court from issuing summary judgment on *all* of Henry's claims. Henry alleges that he was "discriminated against, retaliated against, and *discharged*" in violation of the ADEA and ADA. (ECF No. 18 at ¶¶ 4,6) (emphasis added). While Kroger has done a laudable job of countering Henry's claims as they relate to his transfer, Kroger fails to address Henry's claims that his termination was an adverse, discriminatory action. Indeed, a thorough reading of Kroger's motion reveals that it did not address Henry's claims as they relate to his discharge whatsoever. (ECF No. 40). And although Kroger's reasons for Henry's termination may have been legitimate, this Court declines to develop Kroger's arguments for it.

As the party moving for summary judgment, Kroger carries the initial burden of production to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions

---

[7] Even if Henry had presented a cogent argument, Kroger has presented undisputed evidence of its efforts to accommodate Henry and engage in the interactive process. It also presented evidence of Henry's obstruction of that process which concluded with Henry refusing to work. Henry's transfer does not appear to be in retaliation for his requested accommodations.

on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (1986); *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir. 1998). It can discharge this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325; *Outlaw,* 259 F.3d at 837. Here, Kroger did not even mention Henry's claims that, through his termination, he was discriminated against and retaliated against for exercising his rights under the ADEA or ADA. And termination would almost certainly clear the adverse action hurdle as opposed to Henry's mere transfer. Because Kroger failed to address the merits of Henry's claims as it relates to his termination, Henry's claims should survive summary judgment. *See Knox v. Rhodes*, 2010 WL 3937383 at *3 (S.D. Ill. Mar. 5, 2010) ("In Defendant['s] Motion for Summary Judgment, she failed to address the merits of this specific claim, and therefore, this claim should survive summary judgment."); *McKay v. Town & Country Cadillac, Inc.*, 2002 WL 1285065 at *2 (N.D. Ill. June 7, 2002) (stating that it would be "inappropriate to evaluate the merits" of a retaliation claim where a "defendant's motion for summary judgment failed to address that claim[.]"); *Donnelly v. Chicago Park Dist*, 417 F. Supp. 2d 992 (N.D. Ill. 2006) (By failing "to even acknowledge the actual claim that is pending before the court," a defendant cannot "establish that it is entitled to summary judgment" as to that claim.).

It is Kroger's job to cover all its bases. And an umpire cannot step forward and man home plate. Said differently, the Court will not write Kroger's brief for it. Kroger did not address Henry's termination as an adverse, discriminatory, or retaliatory employment action under the ADEA or ADA. As such, the Court simply cannot grant summary judgment on these claims.

**IV.     Conclusion**

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 39) is GRANTED. Henry's claims as they relate to his termination remain. A status and scheduling conference to schedule the matter for trial will be set by separate entry.

SO ORDERED on January 26, 2024.

                                                s/ *Holly A. Brady*
                                                JUDGE HOLLY A. BRADY
                                                UNITED STATES DISTRICT COURT